UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHERINE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04645-TAB-JRS |
| ) | |
| COMMUNITY INTERGRATION SUPPORT ) | |
| SERVICES, LLC., ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

Plaintiff Catherine Johnson worked as the Director of Human Resources for Community Integration Support Services, LLC ("CISS") for less than a year before resigning. Johnson claims her boss, CISS's owner, subjected her to demeaning and belittling behavior by yelling and cursing at her every week, often in front of others. Johnson filed this action against CISS under Title VII alleging (1) a hostile work environment, (2) discrimination, and (3) constructive discharge. CISS filed a motion for summary judgment [Filing No. 42], arguing that Johnson's allegations, even construed as true, "compel an entry of summary judgment in CISS's favor." [Filing No. 43, at ECF p. 1.] As discussed below, a reasonable juror could find that the alleged harassment Johnson experienced was based on her sex, pervasive, and created both an objectively and subjectively hostile work environment. However, Johnson has not set forth evidence of such intolerable working conditions to establish a constructive discharge claim. As such, she also cannot establish a *prima facie* case of discrimination, as she did not suffer an

adverse employment action.  Therefore, CISS's motion for summary judgment [Filing No. 42] is granted in part and denied in part.

## II.     Background[1]

In February 2018, Johnson began working with CISS as Director of Human Resources. [Filing No. 44-3, at ECF p. 6.]  At the time Johnson was hired, Ranita Norman was the Executive Director.  [Filing No. 44-3, at ECF p. 5.]  As Human Resources Director, Johnson reported to Norman, who acted as her supervisor.  [Filing No. 44-3, at ECF p. 5.]  In July 2018, after Norman left her position, CISS promoted Godwin King from Operations Director to Executive Director, and he became Johnson's supervisor.  [Filing No. 49-2, at ECF p. 2.]

Tim Paul is the owner and president of CISS.  [Filing No. 44-1, at ECF p. 2.]  Every week, Paul yelled and cussed at Johnson, particularly about payroll.[2]  [Filing No. 44-3, at ECF p. 12.]  Paul "would say things like you are supposed to be the HR director."  [Filing No. 44-3, at ECF p. 12.]  On one occasion, Paul referred to Johnson and Norman as "dummies, Tweedledee and Tweedledum."  [Filing No. 44-7, at ECF p. 6.]  Johnson found Paul's conduct belittling because it often happened in the presence or earshot of others.  [Filing No. 44-3, at ECF p. 12.] For instance, Paul called and screamed at Johnson one time when she did not cut a paycheck for a female employee who did not properly turn in her timecard.  [Filing No. 44-3, at ECF p. 13.] Another time, several employees failed to submit timecards on time with a new system following

---

[1] These background facts are either undisputed or assumed as true for the purpose of ruling on CISS's summary judgment motion.

[2] Johnson began working at CISS in February 2018, and Johnson's complaint states that Paul began yelling at her in August.  [Filing No. 1, at ECF p. 2.]  Her testimony is less clear as to when the yelling began, simply stating that the yelling occurred every week.  [Filing No. 44-3, at ECF p. 12.]  At a minimum, however, Johnson's testimony and affidavit indicate that Paul yelled at her at least 20 times over the course of at least five months.

a grace period, so Johnson did not accept the timecards. Paul disagreed and wanted the employees paid. He made Johnson write checks to them while he yelled at her. [Filing No. 44-3, at ECF p. 20.]

Beyond the yelling, cursing, and belittling comments, Johnson felt that Paul further demeaned her because Paul would hold her responsible for things but then not give her the right to enforce policies or procedures. [Filing No. 44-3, at ECF p. 12.] Johnson believed that King, her male supervisor, was treated more favorably than she was treated. [Filing No. 44-3, at ECF p. 30.] Paul allowed King to have more autonomy in his role and make decisions. [Filing No. 44-3, at ECF p. 30.] For instance, in addition to the examples noted above, Johnson recommended terminating an employee for exhibiting unprofessional behavior, but Paul stepped in and merely reprimanded the employee. [Filing No. 44-3, at ECF p. 14.] King told Johnson that it was appropriate to respond to emails within 24 hours. [Filing No. 44-3, at ECF p. 21.] King stated that it was his policy to respond to all emails within 24 hours. [Filing No. 49-2, at ECF p. 3.] However, Paul questioned Johnson's responsiveness to emails and felt that she should respond more promptly. [Filing No. 44-3, at ECF p. 21.] When Johnson called Paul to discuss an email he sent her accusing her of not timely responding to emails, he yelled at her. [Filing No. 44-3, at ECF p. 21-22.]

Johnson witnessed Paul yelling at other employees as well. [Filing No. 44-3, at ECF p. 10.] About a week after she began working at CISS, Johnson saw Paul raise his voice at Norman, the female who originally supervised Johnson. [Filing No. 44-3, at ECF p. 10.] On another occasion, Johnson witnessed Paul yell at Heather Weekes, a female employee who assisted in human resources, over a billing matter. [Filing No. 44-3, at ECF p. 7, 11.] Johnson also witnessed Paul yell at Jared Oldenkamp, a male payroll specialist, one time over a payroll

3

matter. [Filing No. 44-3, at ECF p. 11.] Finally, Johnson observed Paul yell at King, a male, once in a group setting. [Filing No. 44-3, at ECF p. 11.] Johnson could not recall any other specific instances where Paul yelled at Norman, Weekes, Oldenkamp, Godwin, or any other employees besides her. [Filing No. 44-3, at ECF p. 11.] Johnson also testified to two instances when she heard Paul refer to two different women using the word "bitch." [Filing No. 44-3, at ECF p. 25-26.]

According to King, when Paul was upset with the performance of a woman who worked for him, he would yell and curse at the female employee. [Filing No. 49-2, at ECF p. 3.] King stated that if he and Paul were in a meeting with other female managers, Paul "would listen and consider [King's] opinions on an issue but discounted or ignored the opinions of the female managers." [Filing No. 49-2, at ECF p. 3.] Johnson complained to King about Paul belittling her. [Filing No. 49-2, at ECF p. 3.] Johnson spoke with King on a couple of occasions after meeting or talking with Paul, and she was still crying from that meeting or conversation. [Filing No. 49-2, at ECF p. 3.] King told Paul that Johnson had complained about Paul cursing at her. [Filing No. 49-2, at ECF p. 3.] Johnson could not recall whether she ever articulated to Paul how she felt about his behavior. [Filing No. 44-3, at ECF p. 12.] Johnson was fearful that she would be fired if she complained to Paul, though he did not ever threaten to fire her. [Filing No. 44-3, at ECF p. 12.]

On December 20, 2018, Johnson submitted a letter of resignation to her supervisor, King. [Filing No. 44-6, at ECF p. 2.] In the letter, Johnson provided four weeks' notice of her resignation. [Filing No. 44-6, at ECF p. 2.] Johnson's last day was January 18, 2019. [Filing No. 44-6, at ECF p. 2.] Johnson's resignation letter does not mention any concerns with Paul. [Filing No. 44-6, at ECF p. 2.] Johnson claimed she provided four weeks' notice in line with a

4

policy in place at that time that required her to do so or otherwise forfeit accrued paid time off hours that she needed to be paid. [Filing No. 44-3, at ECF p. 27-28.]

On November 21, 2019, Johnson sued CISS, alleging hostile work environment, discrimination, and constructive discharge. [Filing No. 1.] CISS responded by filing the instant summary judgment motion. [Filing No. 42.]

**III.   Discussion**

"The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Henderson v. Irving Materials, Inc.*, 329 F. Supp. 2d 1002, 1004 (S.D. Ind. 2004) (internal citation and quotation marks omitted). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts and draw all reasonable inferences in the light most favorable to Johnson, the non-moving party. *See, e.g., Driveline Sys., LLC v. Artic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019). CISS contends that even if Johnson's allegations are true, it is entitled to judgment in its favor because Johnson's claims of hostile work environment, discrimination, and constructive discharge lack at least one requisite element.

    **A.   Hostile work environment**

> For a plaintiff to prevail on a hostile work environment claim, she must show that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her [sex]; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. A hostile work environment is one that is both objectively and subjectively offensive. In evaluating the objective offensiveness of a plaintiff's work environment, we consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance.

*Tyburski v. City of Chicago*, 964 F.3d 590, 601-02 (7th Cir. 2020) (internal citations and quotation marks omitted).

CISS raises three arguments as to why Johnson cannot prevail on her hostile work environment claim. First, CISS argues Johnson's hostile work environment claim fails because she cannot demonstrate that the Paul's alleged harassing conduct was "because of her sex." [Filing No. 43, at ECF p. 2, 8.] As noted above, Johnson alleged that Paul yelled and cussed at both men and women. Thus, CISS argues that Johnson's allegations indicate Paul is an equal opportunity harasser, which is not covered by Title VII. *See, e.g., Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000) ("[B]ecause Title VII is premised on eliminating *discrimination*, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit. Title VII does not cover the 'equal opportunity' or 'bisexual' harasser, then, because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)."); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 546 (7th Cir. 2011) ("[T]he evidence in this case shows that Johnson was an equal opportunity bully.").

Johnson testified about two specific, separate instances in which Paul yelled and cussed at a male employee. However, Paul yelled at Johnson weekly, over the course of many months. While Johnson's testimony is somewhat lacking in detail, Johnson consistently claimed that she experienced frequent yelling and belittling conduct from Paul. Johnson would cry nearly every time Paul yelled at her. [Filing No. 49-3, at ECF p.2.] Thus, Johnson accurately argues that "[y]elling and cursing at a male employee once is not the equivalent of being yelled and cursed at for weeks on end." [Filing No. 50, at ECF p. 10.] The two isolated instances in the record of Paul yelling at a male employee do not diminish or negate the evidence of a pattern of such

6

behavior occurring weekly with Johnson.  Johnson also heard Paul inappropriately refer to women on two separate occasions as "that bitch" and "a bitch."  [Filing No. 44-3, at ECF p. 25-26.]  In addition, Johnson testified that Paul referred to her and Norman, another female employee, as "Tweedledee and Tweedledum," which can reasonably be seen as a derogatory response.[3]  [Filing No. 44-7, at ECF p. 6.]

Johnson further claims that Paul demeaned her by holding her responsible for things but then not allowing her to enforce policies or procedures at issue.  [Filing No. 50, at ECF p. 4.]  CISS argues that Paul, as owner and president of CISS, had power to overrule the decisions of any of his directors.  [Filing No. 43, at ECF p. 9-10.]  Johnson acknowledges that this is true.  [Filing No. 44-3, at ECF p. 13, 14.]  However, she disputes CISS's characterization of Paul's conduct.  Johnson argues that "by ignoring her opinions as the Director of Human Resources, Mr. Paul diminished this position and Johnson's role at CISS.  This was a major change in the terms and conditions under which Johnson was hired by CISS."  [Filing No. 50, at ECF p. 14.]  Johnson's claims are also bolstered by King's statement.  King stated[4] that Paul yelled and cursed

---

[3] Merriam-Webster Dictionary defines this phrase as "two individuals or groups that are practically indistinguishable." *Tweedledum and Tweedledee*, Merriam-Webster, available at: www.merriam-webster.com/dictionary/Tweedledum%20and%20Tweedledee (last visited April 8, 2021).  The best-known reference is from Lewis Carroll's 1871 book, *Through the Looking Glass* as the names of two fictional twin brothers.  Wikipedia notes that "[t]he names have since become synonymous in western popular culture slang for any two people who look and act in identical ways, generally in a derogatory context." *Tweedledum and T*weedledee, Wikipedia, http://www.wikipedia.org/wiki/Tweedledum_and_Tweedledeehttps://en.wikipedia.org/w/index.php?title=Tweedledum_and_Tweedledee&oldid=1000344585  (last visited April 8, 2021).

[4] CISS contends that the Court should disregard King's statements because he sets forth only "meaningless" conclusory allegations.  [Filing No. 51, at ECF p. 8.] *See, e.g., Berry v. Chicago Trans. Auth.*, 618 F.3d 688, 692 (7th Cir. 2010) ("In this instance, Berry's unsupported allegations are only speculative and conclusory, and therefore cannot withstand summary judgment."); *Gabrielle M v. Park Forest-Chicago Heights, Illinois school Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("Most of the complained-of conduct alleged by Gabrielle is so vague and unspecific that it cannot provide a basis to determine whether that conduct was severe, pervasive, and objectively offensive harassment.  It is well established that in order to withstand

at female employees when he was upset with their performance and belittled female employees by making it clear that he did not care about the female employees' opinions on issues. [Filing No. 49-2, at ECF p. 3.] All of this, taken together, provides sufficient evidence at the summary judgment stage from which a reasonable factfinder could infer that Plaintiff was harassed because of her sex.

Second, CISS argues that Paul's conduct does not rise to the level of being "severe or pervasive" to form an actionable harassment claim. *See, e.g., Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017) ("To create a hostile work environment, the conduct alleged must be sufficiently severe or pervasive to alter the conditions of employment." (Internal citation and quotation marks omitted)).

> In order to meet the third element of a hostile work environment claim, a workplace must be so pervaded by discrimination that the terms and conditions of employment were altered. The behavior need not make the workplace hellish. But it must be more than offhand comments and isolated incidents. In total, to amount to a change in the terms and conditions of employment, the conduct must be extreme.
>
> When determining whether workplace discrimination is extreme enough to create a hostile work environment, the Court considers the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. No single factor is determinative. Rather, the Court must look to the totality of the circumstances and ask whether everything together constitutes a hostile or abusive environment.

*McDowell v. Southwest Airlines Co.*, 412 F. Supp. 3d 978, 986 (S.D. Ind. 2019) (internal citations and quotation marks omitted). *See also Hall v. City of Chicago*, 713 F.3d 325, 330 (7th

---

summary judgment, the non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations."). While the Court agrees that King's affidavit is lacking in detail, it nevertheless raises serious allegations against Paul and provides minimally sufficient support for Johnson's claims.

Cir. 2013) ("To survive summary judgment, Hall must first produce enough evidence that the alleged harassment was severe or pervasive. This requirement is disjunctive—one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts. The hostility must be subjectively and objectively hostile. In other words, Hall must have actually felt harassed and that feeling must be reasonable." (Internal citation and quotation marks omitted)).

CISS does not directly contest that Johnson can meet the subjective requirement of her hostile work environment claim. To do so, Johnson must only establish that she perceived the environment as such, and she has done that here in her complaint and with her deposition testimony. *See, e.g., Renfroe v. IAC Greencastle, LLC*, 385 F. Supp. 3d 692, 704 (S.D. Ind. 2019) ("To meet the subjective requirement of the hostile work environment test, Renfroe must only establish that he perceived the environment to be hostile or abusive."); *Hall*, 713 F.3d at 332 (7th Cir. 2013) ("For the requirement of subjective harassment, we conclude that Hall has produced enough evidence to create an issue of fact. On several occasions, she reported Johnson's conduct to her supervisors, the EEOC, her union, and the police, all of which suggest she interpreted the acts as harassing. Plus, we have implied this burden is not high.").

Instead, CISS's arguments go toward the objectively hostile element. As noted above, "[i]n determining whether a workplace is objectively hostile, we consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo v. Bliss*, 864 F.3d 541, 549-50 (7th Cir. 2017) (internal citation and quotation marks omitted). *See also Renfroe*, 385 F. Supp. 3d at 705 ("Courts consider the totality of the circumstances when assessing the severity or pervasiveness

of the conduct. Specifically, courts consider the frequency of the discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. The Seventh Circuit has also held that pervasive requires a concentrated or incessant barrage of conduct." (Internal citations and quotation marks omitted)).

Johnson alleges that Paul yelled and cussed at her every week and said things like "you are supposed to be the HR director." [Filing No. 44-3, at ECF p. 12.] Merely yelling at a female employee does not give rise to an actionable hostile work environment claim based on sex. *See, e.g., Alamo*, 864 F.3d at 550 ("Title VII is not designed to become a general civility code. Instead, although a workplace need not be hellish to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are altered." (Internal citations, quotation marks, and brackets omitted)); *Holtz v. Marcus Theatres Corp.*, 31 F. Supp. 2d 1139, 1147 (E.D. Wis. 1999) ("Merely yelling at female employees and calling them names does not rise to the level of an actionable hostile work environment."). However, the conduct Johnson describes paints a picture of pervasive conduct that altered the conditions of her employment. Johnson claims that she was brought to tears nearly every single week, and that she dreaded going to work. [Filing No. 49-3, at ECF p. 3.] Paul called Johnson a liar and Tweedledee or Tweedledum, and Johnson heard Paul refer to multiple women as a "bitch." Whether or not Johnson will ultimately convince a jury to rule in her favor is question for another day. But at this point, Johnson has presented sufficient evidence that a reasonable factfinder could conclude that she faced pervasive harassment.[5]

---

[5] Johnson relies, in part, on *Whittaker v. Northern Illinois University*, 424 F.3d 640, 646 (7th Cir. 2006), in arguing that she was subjected to an "incessant barrage" of yelling and cursing from Paul on a nearly weekly basis for months. [Filing No. 50, at ECF p. 14.] CISS notes, however, that *Whittaker* merely references the "severe or pervasive" standard, but otherwise does not provide any support for Johnson's claims. *Id.* at 645-46. In *Whittaker*, the Seventh Circuit

Finally, CISS argues that it can establish an affirmative defense to Johnson's harassment claim and that there is no basis for employer liability. [Filing No. 43, at ECF p. 12.] CISS notes that since Paul, the alleged harasser, is a superior, it can assert as a defense an established anti-harassment policy to avoid strict liability for the supervisor's harassment. CISS argues that it conclusively established both (1) that it had a published anti-harassment policy, and (2) that Johnson failed to take advantage of the policy, because she never told Paul she had a problem with his treatment of her or complained of harassment. [Filing No. 43, at ECF p. 13.]

The policy states: "When possible, confront the harasser and tell him/her to stop. Sometimes a simple confrontation will end the situation. If confrontation is unsuccessful, immediately report the harassment to your supervisor, Human Resources, or the owner." [Filing No. 44, at ECF p. 2.] Here, Johnson was the Director of Human Resources, and her alleged harasser, Paul, was CISS's owner. While Johnson could have confronted Paul, confronting the president of the company with an accusation of harassment is a precarious approach, arguably more difficult than the situation where an alleged harasser is a mere co-worker. Moreover, although confronting one's harasser may have been the preferred approach under CISS's anti-

---

affirmed summary judgment for the employer and concluded that the arguably offensive comments made in Whittaker's presence were "relatively isolated, and alone not actionable." *Id.* at 646. The *Whittaker* decision also references an even earlier Seventh Circuit decision, *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995), in which the Seventh Circuit overturned a jury verdict in the plaintiff's favor despite evidence of vulgar, coarse, and boorish behavior because it was insufficient to establish a hostile work environment. *See Whittaker*, 424 F.3d at 646. While *Baskerville* remains good law, it is over 25 years old and has received its fair share of criticism. Moreover, the conduct at issue here is different—Johnson alleges that she endured months of weekly yelling and other conduct that she found demeaning and belittling. Furthermore, harassment need not be overtly sexual to be actionable under title VII. *See, e.g., E.E.O.C. v. Costco Wholesale Corp.*, 903 F.3d 618, 626 (7th Cir. 2018) ("To be sure, the alleged harassment must occur because of the plaintiff's sex. But it need not consist of pressure for sex, intimate touching, or a barrage of deeply offensive sexual comments. Actionable discrimination can take other forms, such as demeaning, ostracizing or even terrorizing the victim because of her sex." (Internal citations omitted)).

harassment policy, confrontation was not required.  Thus, any suggestion from CISS that Johnson failed to follow the policy because she did not directly report the allegations to Paul, the alleged harasser, falls short.  Under the established policy, other than confronting the company owner and alleged harasser, Johnson's only further recourse was to report the harassment to her supervisor.  At the time in question, Johnson's supervisor was King.  There are sufficient facts to find that Johnson appropriately followed the policy in place and spoke with King to complain about Paul's conduct.

The Court has considered the severity of the alleged discriminatory conduct, its frequency, whether it was physically threatening or merely offensive, and whether it unreasonably interfered with Johnson's work performance.  *See, e.g., Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018) ("[T]o determine whether a particular work environment is objectively offensive, we must consider the severity of the conduct, its frequency, whether it is merely offensive as opposed to physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance.").  Here, the alleged conduct occurred frequently—Johnson claims that Paul yelled at her almost every week to the point of tears.  While there is no evidence that Paul physically threatened Johnson, her testimony depicts behavior that altered the conditions of Johnson's employment, as she dreaded coming to work and was reduced to tears almost every week over the course of several months.  In sum, the intensity, frequency, and condescending nature of the conduct alleged by Johnson is sufficient for a reasonable juror to find that CISS created a hostile work environment.  Therefore, CISS's motion [Filing No. 42] is denied as to Johnson's hostile work environment claim.

### B.     Constructive Discharge

CISS argues that Johnson's constructive discharge claim fails because she voluntarily resigned her employment. [Filing No. 43, at ECF p. 17.]

> An employee is constructively discharged when, from the standpoint of a reasonable employee, the working conditions become unbearable. An employee's constructive discharge can come in two forms. In the first form, an employee resigns due to alleged discriminatory harassment. Such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit . The second form of constructive discharge occurs when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated.

*Wright v. Ill. Dept. of Children & Family Servs.*, 798 F.3d 513, 517 (7th Cir. 2015) (internal citations, quotation marks, and brackets omitted).

Johnson does not allege that CISS communicated that she would be terminated; thus, her claim falls under the first category of constructive discharge claims: egregious work conditions. *See also Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 628 (7th Cir. 2019) ("Constructive discharge requires an employee to prove her working conditions were so intolerable that she was forced into involuntary resignation. To establish such a claim a plaintiff must show working conditions even more egregious than the high standard for hostile work environment claims." (Internal citations and quotation marks omitted)).

Johnson argues that "a reasonable employee would reach their breaking point with the mental abuse being permeated by Mr. Paul." [Filing No. 50, at ECF p. 18.] However, even viewing the facts in the light most favorable to Johnson, she cannot establish she was constructively discharged. *See, e.g., Ulrey v. Reichhart*, 941 F.3d 255, 262 (7th Cir. 2019) ("A constructive discharge can result from a hostile work environment only if the environment is even more egregious than that needed for a hostile work environment. Ulrey has not presented

13

evidence of conditions even approaching that high standard." (Internal citation and quotation marks omitted)); *Hunt*, 931 F.3d at 628-29 ("Here, the alleged conduct, while unacceptable, does not amount to constructive discharge. While comments like these have no place in the workplace, our precedent makes clear that a plaintiff must provide evidence on an environment of significantly greater severity before an actionable claim of constructive discharge materializes."). Constructive discharge requires a level of intolerability that simply is not present here. In this regard, it is notable that Johnson provided four weeks' notice before leaving. Her resignation letter mentions nothing of the hostile work environment she allegedly encountered. Instead, Johnson's letter simply notes that she was submitting her notice of resignation "with mixed emotions[.]" [Filing No. 44-6, at ECF p. 2.] Paul stated that CISS even threw Johnson a going away party before she left on January 18, 2019. [Filing No. 44-1, at ECF p. 3.] For these reasons, Johnson cannot demonstrate that she faced such intolerable or egregious working conditions as to constitute a constructive discharge. Accordingly, CISS's motion for summary judgment is granted on Johnson's constructive discharge claim.

### C. Discrimination

Finally, CISS contends that it is entitled to summary judgment on Johnson's sex discrimination claim because Johnson cannot establish a *prima facie* case of discrimination. [Filing No. 43, at ECF p. 2.] By contrast, Johnson contends that "having her opinions ignored as the Director of Human Resources by the CEO and owner, Mr. Paul, amounts to intentional discrimination." [Filing No. 50, at ECF p. 16.] "To survive summary judgment on a Title VII discrimination claim, a plaintiff must present evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 710 (7th Cir. 2017) (internal citation,

quotation marks, and brackets omitted).  *See also Igasaki v. Ill. Dept. of Fin. and Prof. Reg.*, 988 F.3d 948, 957 (7th Cir. 2021) ("In discrimination cases, when a defendant moves for summary judgment, the singular question for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action."  (Internal citations, quotation marks, and brackets omitted)).

    One common way of proving discrimination under Title VII remains the burden-sifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  "To make a prima facie case under *McDonnell Douglas*, a plaintiff must show: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer." *Igasaki*, 988 F.3d at 957.  Johnson's claim of sex discrimination under Title VII fails under the *McDonnell Douglas* framework because Johnson did not experience an adverse employment action.  As noted above, Johnson voluntarily resigned her employment.  Johnson's constructive discharge claim cannot survive summary judgment.  Furthermore, Johnson does not allege that CISS reduced her compensation or benefits or transferred her to a different position.  Thus, Johnson cannot satisfy the adverse employment prong of a prima facie case under *McDonnell Douglas*.  Accordingly, because Johnson did not carry her burden on *McDonnell Douglas's* adverse employment action prong, CISS's motion for summary judgment is granted as to Johnson's discrimination claim.[6]

---

[6] Because Johnson has failed to establish a *prima facie* case, the Court need not address CISS's arguments regarding job performance, similarly situated co-workers, and improper motive.  *See, e.g., Marnocha v. St. Vincent Hospital & Health Care Ctr.*, 986 F.3d 711, 720-21 (7th Cir. 2021) ("Accordingly, because Marnocha did not carry her burden on *McDonnell Douglas's* similarly situated prong, we conclude that the district court appropriately granted summary judgment on

## IV.     Conclusion

For reasons stated above, CISS's motion for summary judgment [Filing No. 42] is granted in part as to Johnson's constructive discharge and discrimination claims , but denied in part as it relates to Johnson's hostile work environment claim.

This case remains set for a final pretrial conference at 1:30 p.m. on June 1, 2021, and for a jury trial beginning on June 15, 2021.

Date: 4/8/2021

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email

---

her termination claim.  Finding Marnocha did not establish a prima facie case for age discrimination in her termination claim, we do not address her arguments regarding pretext.").

16